## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE FUND**, 257 Park Avenue South New York, NY 10010<br><br>        Plaintiff,<br><br>        vs.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**, 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460<br><br>        Defendant. | **Case No.:** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, the Environmental Defense Fund ("EDF"), alleges as follows:

### I.    INTRODUCTION

1.      This action is premised on violations of the Freedom of Information Act ("FOIA") 5 U.S.C. § 552, which allows an aggrieved party to seek relief when records are unlawfully withheld by a federal agency, and authorizes a reviewing court to enjoin the agency from withholding records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B). EDF challenges the unlawful failure of Defendant, the United States Environmental Protection Agency ("EPA" or "Agency"), to respond to EDF's FOIA requests in the manner and within the time required by FOIA.

2.      On July 19, 2017, in light of concerns about external law firm influence on certain of EPA's activities, EDF submitted a FOIA request to EPA seeking correspondence between a

1

number of EPA employees and any attorney or staff member at a number of external law firms.

On November 1, 2017, EDF submitted a second FOIA request to EPA seeking records related to

reporting made pursuant to 40 C.F.R. Part 60, Subpart OOOOa, which contains pollution control

standards for greenhouse gases and volatile organic compounds from certain oil and gas sources.

On January 25, 2018, EDF submitted a third FOIA request to EPA for records relating to the

review associated with Executive Order 13,783, which directed EPA "to review . . . and, if

appropriate . . . publish for notice and comment proposed rules suspending, revising, or

rescinding" the Clean Power Plan. On May 9, 2018, EDF submitted a fourth FOIA request to

EPA seeking records of certifications and notifications submitted by "glider" vehicle

manufacturers who intend to claim exempt status to produce heavy-duty diesel trucks that do not

meet emission standards.

3.      All four of these requests were submitted as part of EDF's ongoing efforts to

inform the public about EPA activities affecting human health and the environment. EPA has

failed to comply with the statutory mandates and deadlines imposed by FOIA with respect to all

four requests.

4.      FOIA requires an agency to issue a final determination resolving a FOIA request

within twenty business days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R.

§ 2.104(a). With respect to all four of EDF's requests, the statutory twenty-working-day deadline

for providing a determination has lapsed and EPA has not asserted—much less established—that

"unusual circumstances" justify extending the deadlines. 5 U.S.C. § 552(a)(6)(B).

5.      Further, to fulfill FOIA's "strong presumption in favor of disclosure," *U.S. Dep't

of State v. Ray*, 502 U.S. 164, 173 (1991), agencies are statutorily mandated to "make . . . records

promptly available to any person," who submits a request that "(i) reasonably describes such

records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C.

§ 552(a)(3)(A). As described more fully herein, EPA has not satisfied this requirement for any of

the four requests.

6.      EPA's delays in providing final determinations and disclosing responsive records

have thwarted EDF's efforts to timely receive current information in EPA's possession.

7.      EDF is harmed as a matter of law by EPA's violation of rights to which EDF is

statutorily entitled under FOIA. Moreover, EDF and its members are and will be substantially

harmed by EPA's failure to comply with FOIA because this failure directly impacts EDF's

ability to effectively engage in, provide public oversight of, and disseminate full, accurate, and

current information to the public regarding matters of significant public concern involving EPA.

The subject matters of the FOIA requests at issue are of great public interest and immediate

relevance to the interest of EDF's members and EDF's advocacy on their behalf.

8.      Accordingly, EDF seeks declaratory relief establishing that EPA has violated

FOIA. EDF also seeks injunctive relief directing EPA to promptly turn over the requested

material.

## II.      JURISDICTION AND VENUE

9.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), which provides that the district

court of the United States in the district in which the complainant resides, or has its principal

place of business, or in which the agency records are situated, or in the District of Columbia, has

jurisdiction to enjoin the agency from withholding agency records and to order the production of

any agency records improperly withheld from the complainant. This Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331.

10.     Venue is likewise proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

### III.     PARTIES

11.     EDF is a nonprofit corporation under New York State law, organized under section 501(c)(3) of the Internal Revenue Code. Established in 1967, EDF is one of the world's largest environmental organizations, with more than two million members and supporters in the United States. EDF's staff consists of more than 700 scientists, economists, policy experts, and other professionals around the world, including major offices in New York City and Washington, D.C. EDF seeks to solve some of the most critical environmental problems facing humanity, including climate change, pollution, and toxic chemical exposure, and to educate the public about these problems. Among EDF's highest priorities is ensuring that EPA fulfills its critical mission in a manner that is transparent, ethical, fact-based, and free from undue influence. In support of these efforts, between July 2017 and May 2018, EDF submitted to EPA the FOIA requests at issue in this case.

12.     EPA is an agency within the meaning of 5 U.S.C. § 552(f). EPA's mission is to protect human health and the environment by, among other things, ensuring that federal laws protecting human health and the environment are implemented and enforced fairly and effectively. EPA has possession and control of the requested records and is responsible for fulfilling EDF's FOIA request.

### IV.     STATUTORY FRAMEWORK

13.     FOIA requires an agency to issue a final determination resolving an information request within twenty business days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a).

14.     FOIA allows an agency to extend its determination deadline by ten business days when "unusual circumstances" exist and when the agency so notifies a requester in writing. 5 U.S.C. § 522(a)(6)(B); *see also* 40 C.F.R. § 2.104(d) (establishing basis for extension of determination deadline). In limited circumstances, FOIA allows an agency to impose an "unusual circumstances" extension beyond ten business days if the agency provides notice and gives the requesting party an opportunity to work with the agency to modify the request and arrange for an alternative time frame. 5 U.S.C. § 552(a)(6)(B)(ii).

15.     A FOIA requester is generally required to exhaust administrative appeal remedies before seeking judicial redress. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003); *Oglesby v. Dep't of the Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990). However, if an agency fails to make and communicate its "determination" whether to comply with a FOIA request within certain statutory timelines, the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i). At a minimum, the determination must inform the requester what documents the agency will produce and the exceptions it will claim in withholding documents. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013) ("*CREW*").

16.     In the FOIA context, there is a "strong presumption in favor of disclosure," *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173 (1991), and in evaluating the description of the records sought and defining the scope of the concomitant search, an agency "has a duty to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv*., 71 F. 3d 885, 890 (D.C. Cir. 1995).

17.     Agencies are statutorily mandated to "make . . . records *promptly* available to any person," who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A) (emphasis added).

## V.     FACTS

### A.  July 19, 2017 FOIA Request (EPA-HQ-2017-009579)

18.     In the spring of 2017, news organizations reported that EPA might hire private, external law firms to assist the agency with drafting regulations that would weaken or rescind existing protections for public health and the environment. *See, e.g.*, Annie Snider, *Pruitt Allies Explore Hiring Private Lawyers to Rewrite EPA Rule*, Politico (Apr. 18, 2017), http://www.politico.com/story/2017/04/pruitt-water-rules-private-lawyers-237339.

19.     These external law firms have a history of aggressively fighting public health and environmental protections on behalf of their clients in various industries. *See id.*

20.     Because of the public's need to know about external law firm influence on EPA's proposed regulatory rollbacks, EDF submitted a FOIA request to EPA on July 19, 2017 seeking correspondence between a number of specified EPA employees and any attorney or staff member at a number of specified external law firms. EDF requested a fee waiver and expedited processing of the request.

21.     On July 26, 2017, EPA granted EDF's request for a fee waiver and for expedited processing, and notified EDF that EPA's Office of the Administrator would be responding to its FOIA request.

22.     EPA failed to provide a determination on EDF's FOIA request within the 20-working-day deadline, which lapsed on August 16, 2017. 5 U.S.C. § 552(a)(6)(A)(i).

23.     On September 6, 2017, after receiving no further information from EPA about this request, EDF Legal Fellow Samantha Caravello called EPA's FOIA Public Liaison and was informed that EPA Attorney-Advisor Jonathan Newton was the appropriate contact person for the request. Ms. Caravello called Mr. Newton, who explained that EDF likely would not receive any response to the request before December 2017.

24.     On September 20, 2017, Ms. Caravello called and emailed Mr. Newton for any updates about the status of this request, but did not receive any response.

25.     On September 22, 2017, Ms. Caravello attempted to follow up with Mr. Newton by phone and email, but did not receive any response.

26.     On September 27, 2017, Ms. Caravello again called and emailed Mr. Newton. Mr. Newton replied by email that he would provide an update on the status of EDF's FOIA request by close of business that day. But Mr. Newton did not provide the update, nor did he respond to an email inquiry Ms. Caravello sent the following day.

27.     On October 2, 2017, Ms. Caravello called and emailed Mr. Newton. Later that day, Mr. Newton responded with a "Request for Clarification" letter. The letter stated that EPA would be unable to process EDF's FOIA request because the request "fail[ed] to adequately describe the records sought." Although EDF believed the FOIA request was valid as originally submitted, on October 13, in order to facilitate EPA's search for responsive records, Ms. Caravello emailed Mr. Newton with the clarification that he requested.

28.     Having received no response, on October 17, 2017, Ms. Caravello emailed Mr. Newton seeking confirmation of his receipt of her October 13 email and seeking an update on the status of EDF's request. Mr. Newton responded that same day, confirming receipt of Ms. Caravello's clarifying email and stating that there were approximately 70 expedited requests

ahead of EDF's request in the queue but providing no update on when EPA would respond to the request.

29.     On November 2, 2017, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

30.     On November 17, 2017, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

31.     On November 30, 2017, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

32.     On December 12, 2017, Ms. Caravello called and emailed Mr. Newton. The following day, December 13, 2017, Mr. Newton replied by email, informing Ms. Caravello that there were 171 requests ahead of EDF's request in the queue, including 30 that had been granted expedited processing.

33.     On January 11, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

34.     On January 25, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

35.     On February 2, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

36.     On February 22, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

37.     On March 19, 2018, Ms. Caravello called and spoke with Mr. Newton, who informed her that EDF would receive a partial production of documents by the end of May 2018, with the remainder of the documents to be released at a later date. Ms. Caravello sent an email to

Mr. Newton documenting their conversation. Mr. Newton replied that same day, March 19, 2018, clarifying that the records he had referred to during the phone call would be released in response to a *different* FOIA request, though they should satisfy portions of EDF's FOIA request. Ms. Caravello wrote back seeking the tracking number of the other request Mr. Newton referred to in his email, and asking for an update on the status of EDF's FOIA request. Mr. Newton did not respond.

38.     On March 28, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

39.     On April 13, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

40.     On May 24, 2018, Ms. Caravello called and emailed Mr. Newton, but did not receive any response.

41.     EDF was not notified about the availability of any documents at the end of May 2018—or at any other time—despite the statements in Mr. Newton's March 19, 2018 email.

42.     On June 2, 2018, EDF Attorney Benjamin Levitan received an email from EPA's Nicole Rementer stating that EDF's request was number 80 in the Office of the Administrator's queue, and estimating a completion date of January 14, 2019. The email did not acknowledge that EDF's request had received expedited processing or make note of the number of expedited requests ahead of EDF's in the queue.

43.     Over sixteen months have passed since EDF submitted this request. Despite the fact that this request was granted expedited processing, EDF has not yet received *any* documents responsive to the request, and EPA now predicts the request will not be completed until approximately one and one-half years after the request was submitted. Additionally, EDF's

phone calls and emails to EPA have repeatedly gone unreturned, and EPA has failed to inform

EDF of "the scope of the documents that the agency will produce, as well as the scope of the

documents that the agency plans to withhold under any FOIA exemptions," even though the

statutory timelines set forth in FOIA have long passed. *CREW*, 711 F.3d at 186.

**B.  November 1, 2017 FOIA Request (EPA-HQ-2018-001268)**

44.     On June 3, 2016, EPA promulgated new source performance standards for

greenhouse gases and volatile organic compounds from certain new, modified, and reconstructed

oil and gas sources ("2016 NSPS"). 81 Fed. Reg. 35,824. The standards appear in the Code of

Federal Regulations at 40 C.F.R. Part 60 Subpart OOOOa, and are accordingly referred to in this

complaint as the "OOOOa regulations."

45.     EPA recently proposed to weaken key protections in the OOOOa regulations. 83

Fed. Reg. 52,056 (October 15, 2018). That proposal rests in large part on alleged uncertainties,

*e.g.*, *id.* at 52,064, that would be informed by the information EDF seeks through this FOIA

request. EPA's failure to produce the requested records not only violates FOIA but also

compromises the public's ability to meaningfully participate in the comment period on this

proposal, which expires December 17, 2018. *Id.* at 52,056.

46.     Among other requirements, the OOOOa regulations provide that owners or

operators of covered facilities must submit reports to demonstrate compliance with the

regulations ("compliance reports"). *See* 40 C.F.R. §§ 60.5422a(a)–(b), 60.5420a(b).

47.     Clean Air Act section 114 authorizes these reporting requirements and requires

reports obtained under this section to be made publicly available. 42 U.S.C. § 7414. Though

section 114 contains an exception to disclosure for certain confidential business information, that

exception expressly does not apply to emission data. *Id.* The compliance reports contain emission data. *See* 40 C.F.R. § 2.301(a)(2)(i).

48.     The 2016 NSPS rule and the OOOOa regulations clearly require the compliance reports to be made publicly available. In the 2016 NSPS, EPA envisioned that "[b]y making the records, data and reports addressed in [the 2016 NSPS] readily available, the EPA, the regulated community and the public will benefit when the EPA conducts its CAA-required reviews." 81 Fed. Reg. at 35,870. The OOOOa regulations state that reporting parties "must submit reports to the EPA via" EPA's emissions reporting interface. 40 C.F.R. § 60.5420a(b)(11); *see id.* § 60.5422a(a). EPA's website specifically notes that its emissions reporting interface "does not support collection of *confidential business information*." EPA, *Compliance and Emissions Data Reporting Interface (CEDRI)*, https://www.epa.gov/electronic-reporting-air-emissions/compliance-and-emissions-data-reporting-interface-cedri (last visited July 2, 2018).

49.     Owners and operators were required to submit initial annual reports by the end of October 2017. *See* 81 Fed. Reg. 35,912 (initial compliance period ends no later than one year after August 2, 2016); *id.* at 35,846 (initial annual reports due no later than 90 days after the end of the initial compliance period).

50.     Without access to these reports, EDF and the general public are being deprived of information critical to developing meaningful public comment on EPA's proposed weakening of the 2016 NSPS.

51.     On November 1, 2017, EDF electronically filed a FOIA request with EPA seeking records related to reporting made pursuant to the OOOOa regulations. Specifically, EDF requested two categories of records: (1) copies of all reports submitted pursuant to the OOOOa regulations' reporting requirements; and (2) copies of all EPA correspondence (internal and

external) containing reference to the OOOOa regulations and containing one or more of a number of search terms, including words such as "delay," "postpone," and "variance." EDF sought a fee waiver and expedited processing for this request.

52.     Although EPA has released some responsive records, with respect to a significant portion of records requested, EPA has extensively delayed responding to EDF's request. EDF continues to seek the following records: (1) copies of OOOOa compliance reports that EPA has not yet released because the reporting companies claim they contain confidential business information ("CBI") and (2) the remaining responsive correspondence from custodians at EPA's regional offices.

53.     EPA did not respond to EDF's request for expedited processing within the 10-calendar-day deadline to do so. 5 U.S.C. § 552(a)(6)(E)(ii)(I); 43 C.F.R. § 2.20(d). Nor did EPA provide a determination on EDF's request within the 20-working-day deadline to do so, which lapsed on December 3, 2017. 5 U.S.C. § 552(a)(6)(A)(i).

54.     On December 5, 2017, after receiving no information about this request, EDF Legal Fellow Samantha Caravello called the EPA FOIA Public Liaison and was directed to Maya Newman in EPA's Office of Compliance. On December 5, and again on December 12, 2017, Ms. Caravello called Ms. Newman to determine the EPA staff member specifically assigned to handle EDF's FOIA request, but Ms. Newman did not return either call.

55.     On December 7, 2017, EPA informed EDF that it had determined that the fees incurred in processing the FOIA request would not reach a billable amount. In the same correspondence, EPA denied EDF's expedited processing request. The letter also stated that the request, which EPA had assigned tracking number EPA-HQ-2018-001268, would be managed by EPA's Office of Enforcement and Compliance Assurance.

56.     On January 11, 2018, having received no information about EPA's processing of the FOIA request, Ms. Caravello again called the EPA FOIA Public Liaison, who suggested contacting Jernell Battle. Ms. Caravello called Ms. Battle the same day but did not receive a response for almost two weeks, until January 23, 2018, when Ms. Battle informed Ms. Caravello that EDF's FOIA request had inadvertently been marked as a "hold" and had not yet been sent to the appropriate EPA office.

57.     On January 26, 2018, Ms. Battle emailed Ms. Caravello with the news that the problem had been resolved, and that she would soon be sending the FOIA request to Marcia Mia in EPA's Office of Compliance. Ms. Battle also asked whether EDF would be willing to grant EPA an extension for responding to the FOIA request, though EPA's response was already nearly two months overdue.

58.     On January 29, 2018, Ms. Mia emailed Ms. Caravello requesting that EDF agree to limits on the scope of its FOIA request to make it consistent with another request received by EPA. In a phone call with Ms. Mia and Ms. Battle on January 31, 2018, Ms. Caravello agreed to some of the proposed limitations, but declined to agree to others. Specifically, EDF did not agree to limit the scope of its request for correspondence records to records from EPA headquarters, instead maintaining that the records of custodians in EPA's regional offices be searched as well. Ms. Caravello, Ms. Mia, and Ms. Battle planned to discuss a possible extension of EPA's time for responding to the request at a later date.

59.     Six weeks after their January 31, 2018 conversation, EPA still had not provided any proposed extension or proposed timeline for responding to EDF's FOIA request.

60.     On March 21, 2018, Ms. Caravello received an email from EPA Attorney-Advisor Peter Bermes. Mr. Bermes provided a link to a page on EPA's FOIAonline website where EDF

could access an interim release of records responsive to its request. The interim release consisted of a small production of correspondence records as well as a production of compliance reports. Mr. Bermes also provided a projected schedule for further releases, noting that EPA expected to produce additional records on April 6 and May 4, 2018. Mr. Bermes wrote that EDF's request for correspondence records from regional custodians would take longer to process, but that EPA expected to process those records and close the FOIA request by June 8, 2018. EPA issued an interim production on April 11, 2018.

61.     On April 27, 2018, Ms. Caravello called Mr. Bermes to discuss EDF's FOIA request. Mr. Bermes stated his expectation that EPA was planning to release half of the compliance reports by May 4, 2018, with productions of correspondence records released after that. However, Mr. Bermes also explained that EPA would *not* be releasing approximately half of the responsive compliance reports because the reporting parties had claimed that those reports contained CBI.

62.     On May 7, 2018, Mr. Bermes alerted Ms. Caravello to the release of a new production of some of the compliance reports without CBI claims. The next day, Ms. Caravello called Mr. Bermes to discuss EPA's timeline for responding to the remainder of EDF's FOIA request and EPA's process for considering CBI claims. Regarding responsive correspondence, Mr. Bermes stated that EDF could expect interim productions sometime in May, and a final production by the end of June.

63.     On May 24, 2018, Ms. Caravello called Mr. Bermes, who again stated that EDF would receive the remaining compliance reports by the end of May, and that EDF would receive some of the correspondence records in May, and some in June. Mr. Bermes stated that he had not

14

yet received the collection of correspondence from regional custodians, and that he did not yet have any updates on EPA's CBI review process.

64.     On June 8, 2018, Mr. Bermes emailed Ms. Caravello with notice that the production of correspondence records from headquarters would be delayed until the end of June, and that the collection of correspondence from regional custodians was larger than anticipated. Mr. Bermes suggested narrowing the requested search before EPA's review of the documents.

65.     Between June 18 and June 20, 2018, Mr. Bermes and Ms. Caravello discussed how to narrow EDF's request for correspondence records from regional custodians. On June 20, 2018, they reached agreement on narrower search terms for this portion of EDF's request.

66.     On June 27, 2018, Mr. Bermes emailed Ms. Caravello with links to access what he represented were the "final sweep" of EPA's collection of compliance reports without CBI claims.

67.     Mr. Bermes and Ms. Caravello also spoke by phone on June 28, 2018 and discussed the process for EPA's review of the compliance reports claimed to contain CBI. Mr. Bermes told Ms. Caravello that EPA would be starting the CBI review process within the next two weeks. Ms. Caravello expressed EDF's position that the compliance reports do not contain CBI and that because the reports collect emission data within the meaning of Clean Air Act section 114, EPA is required to make the reports publicly available.

68.     Also on June 28, 2018—nearly eight months after EDF submitted this FOIA request—EDF received email notification from EPA that the agency would soon begin reaching out to reporting parties that claimed their reports contained CBI so that those parties could provide substantiation for their CBI claims.

69.     On July 2 and 3, 2018, Mr. Bermes and Ms. Caravello discussed the correspondence records portion of EDF's request. Mr. Bermes stated that EPA expected to release additional headquarters correspondence records later in the month and an initial production of correspondence records from regional custodians by the end of July 2018.

70.     On July 12, 2018, Mr. Bermes provided Ms. Caravello with a partial production of headquarters correspondence records.

71.     On August 2, 2018, Mr. Bermes updated Ms. Caravello regarding the timeline for EPA's further production of correspondence records, stating that the remainder of headquarters correspondence records and the initial production of regional correspondence records would be released by the end of August 2018. EDF did not receive these records by the end of August 2018, and on August 30, 2018, Mr. Bermes notified Ms. Caravello that EPA expected to release the remainder of the headquarters correspondence records during the first week of September and the initial production of regional correspondence records in the first or second week of September.

72.     During their August 2 conversation, Mr. Bermes also provided Ms. Caravello with a new contact person for EPA's review of the compliance reports claimed to contain CBI, Joan Kaminer in the agency's Office of General Counsel. Ms. Caravello spoke with Ms. Kaminer on August 29, 2018, and Ms. Kaminer stated that EPA was still in the process of drafting letters to businesses asking them to substantiate their CBI claims. Ten months after EDF's request was submitted and two months after the CBI case was formally initiated, these letters had not yet been completed or sent.

73.     On October 9, 2018, Mr. Bermes emailed EDF legal fellow Jessica Christy, providing a link to responsive records that had been released in July under a different FOIA

request but that EPA was only now—three months later—providing to EDF. This production

contained the remaining compliance reports that did not involve CBI claims.[1] Mr. Bermes also

provided links to the remaining responsive correspondence from EPA headquarters. To date,

EPA has only provided some of the responsive correspondence from record custodians at EPA

regional offices; Mr. Bermes suggested that EDF might receive a partial production by the end of

October 2018 but provided no estimate for the remaining regional correspondence. Nor did EPA

provide any estimate of when it would complete processing the compliance reports that involve

CBI claims.

74.      On November 8, 2018, EDF received an interim production of records consisting

of 277 pages related to "correspondence of regional custodians." EPA did not indicate what

proportion of the "correspondence of regional custodians" this production constituted or when

the remaining correspondence would be released. EPA also provided no additional information

about the compliance reports.

75.      Despite the fact that EDF submitted this request more than thirteen months ago,

EPA has yet to produce some correspondence records from regional custodians, has produced

only some of the compliance reports, and has extensively delayed reviewing the remaining

reports for claims that they contain CBI. Additionally, EPA's review of EDF's request was

initially delayed due to an unexplained administrative glitch that put the request on "hold," and

EPA did nothing at all to respond to the request for approximately three months after the request

was submitted. Finally, aside from baselessly claiming that certain responsive information may

be CBI, EPA has failed to inform EDF of "the scope of the documents that the agency will

---

[1] In his October 9 email, Mr. Bermes used the term "Proprietary Business Information (PBI)," but we are continuing
to use "CBI" for clarity.

produce, as well as the scope of the documents that the agency plans to withhold under any

FOIA exemptions," within the statutory timelines set forth in FOIA. *CREW*, 711 F.3d at 186.

**C. January 25, 2018 FOIA Request (EPA-HQ-2018-003777)**

76.     On March 28, 2017, President Trump signed Executive Order 13,783, which

directed EPA "to review . . . and, if appropriate . . . publish for notice and comment proposed

rules suspending, revising, or rescinding" the Clean Power Plan ("CPP"). Exec. Order No.

13,783, § 4, 82 Fed. Reg. 16,093, 16,095 (published Mar. 31, 2017). The CPP contains the

nation's only federal limits on carbon pollution from existing power plants.[2]

77.     On October 16, 2017, EPA published a proposal to repeal the CPP. *See* 82 Fed.

Reg. 48,035. In the proposed repeal, EPA states, "In accordance with Executive Order 13,783 . .

. the EPA has reviewed the CPP and *is initiating this action based on the outcome of that*

*review*." 82 Fed. Reg. at 48,036 (emphasis added). EPA did not include any documents produced

during the Executive Order review in the rulemaking docket for the proposed CPP repeal, or

otherwise make them available to the public. EPA has since proposed to replace the CPP with a

rule that is far less protective of public health and the environment. *See* 83 Fed. Reg. 44,746

(Aug. 31, 2018). The proposal reiterates the Executive Order's directive to revisit the CPP and

reaffirms that EPA proposed to repeal the CPP "on th[e] basis" of that review. *Id.* at 44,750.

78.     Any records produced by this review are of immense public importance, as they

would bear on EPA's analysis of and rationale for proposing to repeal a rule that EPA predicted

would yield enormous public health and environmental benefits. Indeed, EPA has acknowledged

that its proposed replacement for the CPP could yield more than 1,000 additional deaths per year.

*See* EPA, Regulatory Impact Analysis for the Proposed Emission Guidelines for Greenhouse Gas

---

[2] *See generally*, Carbon Pollution Emission Guidelines for Existing Stationary Sources: Electric Utility Generating Units, 80 Fed. Reg. 64,662 (Oct. 23, 2015).

Emissions from Existing Electric Utility Generating Units 4-33 tbl. 4-6 (Aug. 2018). The deadline for submitting comments on the proposed repeal passed on April 26, 2018. The deadline for comments on the advance notice of a proposed CPP replacement, which expressly adopted elements of the proposed repeal, passed on February 26, 2018. The deadline for submitting comments on the proposed replacement passed on October 31, 2018. *See* Emission Guidelines for Greenhouse Gas Emissions from Existing Electric Utility Generating Units (Notice of public hearing and extension of comment period), 83 Fed. Reg. 45,588 (Sept. 10, 2018). In the absence of information about the CPP review, the public's ability to provide meaningful comments on those items was compromised. Releasing these records is especially important given the Clean Air Act requirement that EPA place materials relied upon in the record for proposed regulations, *see* 42 U.S.C. § 7607(d)(3).

79.     In order to obtain these records, on January 25, 2018, EDF electronically filed a FOIA request with EPA for records relating to the Executive Order review. EDF sought a fee waiver and expedited processing for this request.

80.     On January 31, 2018, EPA's National FOIA Officer electronically sent EDF a letter granting EDF's request for a fee waiver and denying EDF's request for expedited processing. The letter also provided a tracking number for the request, EPA-HQ-2018-003777, and noted that the Office of Air and Radiation would be processing this request.

81.     EPA's 20-working-day deadline for providing a determination on EDF's request lapsed on February 26, 2018.

82.     On March 5, 2018, having received no information about EPA's search for responsive records since submitting the request, EDF Legal Fellow John Bullock called the EPA FOIA Public Liaison seeking information about this request. On March 8, EPA Government

19

Information Specialist Tiffany Purifoy sent an email to Mr. Bullock stating that she had reached

out to the EPA staff member who was searching for responsive documents and would provide an

update once she had heard back.

83.     On March 16, Ms. Purifoy informed Mr. Bullock that a search for responsive

records had begun, and she would notify him when her office received records to review. Two

weeks later, on March 30, Mr. Bullock again reached out to Ms. Purifoy. Ms. Purifoy responded

with information about how the agency had conducted its search for records, indicated that the

search had produced numerous records, and stated that she would provide Mr. Bullock with an

additional update "no later than April 16."

84.     On April 19, having received no updates, Mr. Bullock called Ms. Purifoy and sent

a follow-up email. Ms. Purifoy responded on April 23, stating, "[W]e should be able to send you

our first interim release of records by the end of this week, April 27, 2018." On April 27, Ms.

Purifoy called Mr. Bullock and indicated that she expected the first production to go out by the

end of the day. The search had produced many records that were unlikely to be responsive to the

initial request, and in a follow-up email later that day, Ms. Purifoy acknowledged Mr. Bullock's

request "that the Agency give priority to documents related to the [Executive Order] review

itself, including the outcome of the review, and meetings around the rule." Later that day, Ms.

Purifoy emailed Mr. Bullock informing him that the records would be produced the following

week. On May 3, EPA released a 45-page interim production, which did not contain any records

responsive to EDF's request, but instead contained correspondence from career employees

preparing the rulemaking package and managing the docket after EPA was already preparing to

propose repealing the Clean Power Plan.

85.    On May 11, Mr. Bullock emailed Ms. Purifoy to tell her that EDF had reviewed

the production, and to ask if she had an update "on any documents that we have prioritized for

review." On May 24, having received no response, Mr. Bullock again called Ms. Purifoy and left

a voicemail, asking for an update. Ms. Purifoy called Mr. Bullock back, indicating that there

would be another interim production at the very latest by the end of the following week, on June

1.

86.    On June 11, having not received the second interim production, Mr. Bullock

contacted Ms. Purifoy for an update. Two days later, Ms. Purifoy emailed Mr. Bullock stating,

"We expect to be able to send the documents to you by this afternoon but no later than tomorrow

morning, June 14, 2018." The next day, on June 14, Ms. Purifoy emailed Mr. Bullock indicating

that the production would not be released by the end of the day but that she "will follow up with

[Mr. Bullock] on Monday June 18, 2018." On Monday, June 18, EDF received the second

interim production, which was 107 pages long and again did not contain any records relating to

the Executive Order review. The next day, Mr. Bullock and Ms. Purifoy discussed the remaining

records, and Ms. Purifoy stated that she would give EDF an update when she returned to her

desk later that week.

87.    On June 27, Mr. Bullock followed up with Ms. Purifoy, asking how many records

remained to be processed. Ms. Purifoy responded that she was "unable to determine how many

documents are left to review," but that the office "expects to provide the next interim release of

documents to you by July 13, 2018." EDF has since received three additional productions for this

FOIA request: a 92-page interim production on July 30, a 367-page interim production on

August 28; and a 491-page production on October 18. But like the prior productions, these

productions contained no information about the Executive Order review. A letter accompanying

the October 18 production indicated that the remaining responsive records, if any, would be provided by the Office of the Administrator.

88.     More than ten months have passed since EDF filed its FOIA request about the CPP review pursuant to Executive Order 13,783. EPA has failed to inform EDF of "the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions" within the statutory timelines outlined by FOIA. *CREW*, 711 F.3d at 186. Furthermore, while EPA has released five interim productions, they are so remote from the subject of the FOIA request that it is impossible to confirm from the records whether the Executive Order review actually occurred at all, much less to assess the analysis and conclusions it produced. Without these records, the public's ability to participate in the ongoing regulatory developments remains compromised.

### D.  May 9, 2018 FOIA Request (EPA-HQ-2018-007516)

89.     In 2016, EPA issued a final rule, *Greenhouse Gas Emissions and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles—Phase 2*, 81 Fed. Reg. 73,478 (Oct. 25, 2016) ("Phase 2 Rule"), which contained provisions requiring that heavy-duty diesel "glider" vehicles comply with the criteria pollutant emission standards for new heavy-duty trucks. Gliders are built by installing a remanufactured engine into a new truck body, and historically were manufactured only in very small numbers as a means to salvage usable engines from wrecked trucks. Over the last decade, however, the market expanded drastically, with the result that sales of new glider trucks with old engines that lack modern pollution control technology dramatically increased, with deleterious impacts on air quality. *See* EPA, *Greenhouse Gas Emissions and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles - Phase 2: Response to Comments for Joint Rulemaking* 1960 (Aug. 2016). Gliders—

also known as "super-polluting" diesel trucks—emit up to 43 times the nitrogen oxide pollution and 450 times the particulate matter pollution of trucks that comply with current emission standards. U.S. EPA, *Chassis Dynamometer Testing of Two Recent Model Year Heavy-Duty On-Highway Diesel Glider Vehicles* (Nov. 20, 2017), Docket No. EPA-HQ-OAR-2014-0827-2417, https://www.regulations.gov/document?D=EPA-HQ-OAR-2014-0827-2417.

90.   The Phase 2 Rule clarified that new gliders are subject to the same emission standards as other new trucks, but includes an exemption that allows small manufacturers to produce up to 300 noncompliant gliders each year through 2021. 40 C.F.R. § 1037.150(t)(1).

91.   Manufacturers seeking to exercise this exemption are required to file reports on their glider production with EPA. *Id.* § 1037.150(t)(1)(i), (iii); *id.* § 1037.250. The information contained in these reports is important in order to understand how EPA is enforcing pollution standards, as well as the degree to which gliders continue to threaten public health. EPA has not released any information about the number of manufacturers producing exempt glider vehicles, nor about the total number of these harmful trucks being added to the roadways each year.

92.   EDF electronically filed a FOIA request with EPA on May 9, 2018, seeking records of reports submitted by glider vehicle manufacturers to EPA. EDF sought a fee waiver and expedited processing for this request.

93.   In November 2017, EPA issued a proposal to repeal the glider provisions of the Phase 2 Rule and allow unlimited production of super-polluting glider trucks. Proposed Rule: *Repeal of Emission Requirements for Glider Vehicles, Glider Engines, and Glider Kits*, 82 Fed. Reg. 53,444 (Nov. 16, 2017). Since EDF submitted its FOIA request, EPA has made further overtures to lift any controls on emission levels of these vehicles. On July 6, 2018—the final day of Administrator Pruitt's tenure at EPA—the Assistant Administrator of the Office of

Enforcement and Compliance Assurance issued a "No Action Assurance" memo committing

EPA not to take any enforcement action against any glider manufacturer or supplier in 2018-19,

effective immediately. EDF and additional environmental organizations filed an emergency

motion for a stay of the rule, which the court granted. Order, *Envtl. Def. Fund v. EPA*, Case No.

18-1190, Doc. No. 1741224 (D.C. Cir. July 18, 2018). On July 26, 2018, Acting EPA

Administrator Wheeler issued a memo withdrawing the No Action Assurance memo, restoring

the regulatory status quo. The memo, however, indicates Acting Administrator Wheeler's

continuing inclination to repeal the glider provisions, as it states that EPA "shall continue to

move as expeditiously as possible on a regulatory revision regarding the requirements that apply

to the introduction of glider vehicles into commerce." Memorandum from EPA Acting

Administrator Andrew R. Wheeler to Assistant Administrators Susan Parker Bodine and William

L. Wehrum (July 26, 2018).

94.     EPA did not respond to EDF's request for expedited processing within the

10-calendar-day deadline to do so. 5 U.S.C. § 552(a)(6)(E)(ii)(I); 43 C.F.R. § 2.20(d). On May

24, EPA denied the requested fee waiver and expedited processing.[3] Additionally, EPA did not

provide a determination on EDF's request within the 20-working-day deadline to do so, which

lapsed on June 14, 2018. 5 U.S.C. § 552(a)(6)(A)(i).[4]

95.     On May 30, 2018, EDF Attorney Erin Murphy called FOIA Officer Jonathan

Lubetsky, who was unable to describe the status of the request.

---

[3] On July 23, 2018, EDF filed an administrative appeal of EPA's denial of a fee waiver for this request. On September 18, EPA's Office of General Counsel issued a final determination that the "FOIA request will generate no fees," and closed the appeal as moot. *See* Letter from Kevin Miller, EPA, to Erin Murphy, EDF (Sept. 18, 2018).
[4] The original deadline was June 7, 2018. June 14 accounts for any tolling of the deadline that may have occurred while EPA sought clarification of the request from EDF.

96.     On June 6, 2018, EPA's Tanya Meekins emailed Ms. Murphy, asking to schedule a conference call to discuss EDF's FOIA request. On June 13, 2018, the following individuals participated in a call: Ms. Murphy; Benjamin Levitan, an attorney at EDF; Mr. Lubetsky; Ms. Meekins; and Stephen Healy of EPA's National Vehicle and Fuel Emissions Laboratory. Ms. Murphy and Mr. Levitan provided clarification to the EPA staff about the records sought in the FOIA request.

97.     On June 20, 2018, Ms. Murphy called Mr. Healy for a further clarification, and he informed Ms. Murphy that he had assembled a set of responsive records, which he had transmitted to EPA FOIA staff for review.

98.     On June 21, 2018, Ms. Murphy called Mr. Lubetsky and left a message, but did not receive any response.

99.     On July 9, 2018, Ms. Murphy called Mr. Lubetsky, who stated that the responsive records had been collected and were undergoing review.

100.     On July 20, 2018, Ms. Murphy called Mr. Lubetsky, who stated that the requested records had been collected and were under review.

101.     On July 25, 2018, Mr. Lubetsky called Ms. Murphy and stated that EPA staff were initiating the review of the documents and that they expected to release an initial production the following week.

102.     EPA did not release any documents the following week.

103.     On August 17, 2018, Ms. Murphy left a voicemail for Mr. Lubetsky seeking an update about the FOIA request. He returned the call and informed Ms. Murphy that about 2,000 records had been identified as responsive and were under review.

104.    On August 29, 2018, Ms. Murphy left a voicemail for Mr. Lubetsky. He returned

the call and informed Ms. Murphy that the 2,000 responsive documents were still being

reviewed, and that he expected that EPA would issue a production the following week or the

week after that.

105.    EPA did not release any documents the following week or the week after that.

106.    On September 12, 2018, Ms. Murphy called Mr. Lubetsky and left a voicemail.

107.    On September 14, 2018, Ms. Murphy called Mr. Lubetsky, who informed her that

document review had been delayed by an internal error, and that staff were reviewing the

documents for release. Mr. Lubetsky further stated that EPA was aiming to issue an interim

production sometime during the next two weeks.

108.    On October 3, 2018, Ms. Meekins emailed Ms. Murphy, asking if Ms. Murphy

would be available to discuss a "follow up question" about the request. On October 4, Ms.

Meekins and Mr. Healy with EPA, and Ms. Murphy and Mr. Levitan with EDF, spoke by

teleconference. The EPA staff explained their sense that the historic glider production numbers

that manufacturers reported to EPA constitute confidential business information ("CBI")—but

they had not made a formal determination to that effect. Ms. Meekins and Mr. Healy proposed

instead to release to EDF the *aggregate* number of gliders that are eligible for production under

the exemption.

109.    On October 5, 2018, Ms. Murphy emailed Ms. Meekins and Mr. Healy to suggest

a path forward, whereby EPA would release the aggregate number of gliders eligible for

production in 2018, as well as the notification letters from individual glider manufacturers with

their historic production numbers redacted. This would allow EDF to review the undisputed parts

26

of the documents sought in its FOIA request, and consider whether to seek the redacted portions.

EPA has not responded to this communication.

110.    Nearly seven months have passed since EDF submitted this FOIA request.

Despite the fact that EPA staff gathered most, if not all, of the responsive documents several

months ago, the agency has yet to produce any records. EPA has ostensibly been reviewing the

responsive records for several months now. EPA has failed to inform EDF of "the scope of the

documents that the agency will produce, as well as the scope of the documents that the agency

plans to withhold under any FOIA exemptions" within the statutory timelines outlined by FOIA.

*CREW*, 711 F.3d at 186. And throughout the pendency of the request, EPA has continued to

pursue deregulatory actions that would eliminate pollution limits for glider vehicles and cause

harm to public health, ensuring the continued importance and urgency of this FOIA request.

## VI.    CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

**Failure to Make Timely Determinations on Plaintiff's FOIA Requests EPA-HQ-2017-009579, EPA-HQ-2018-001268, EPA-HQ-2018-003777, and EPA-HQ-2018-007516**

111.    Plaintiff EDF re-alleges and incorporates by reference the allegations made in all

preceding paragraphs.

112.    EDF, through its FOIA requests dated July 19, 2017, November 1, 2017, January

25, 2018, and May 9, 2018, properly asked for records within EPA's control.

113.    EDF has a statutory right to a final determination from EPA on its FOIA requests

in a manner that complies with FOIA. EPA has violated EDF's rights in this regard by

unlawfully delaying its response beyond the deadline that FOIA mandates. 5 U.S.C. §

552(a)(6)(A)(i) (setting a twenty-day deadline for FOIA request determinations).

114.     EPA has thus failed to respond to EDF's requests within the statutorily mandated timeframe, in violation of EDF's rights under FOIA, including but not limited to 5 U.S.C. § 552(a)(6)(A)(i).

115.     EDF has exhausted the applicable administrative remedies with respect to EPA's failure to make final determinations regarding EDF's requests within the determination deadlines imposed by FOIA, *id.* § 552(a)(6)(A)(i) and (6)(C).

116.     Unless enjoined and made subject to a declaration of EDF's legal rights by this Court, EPA will continue to violate EDF's rights to receive public records under FOIA.

## COUNT II

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Provide the Records Responsive to Plaintiff's FOIA Requests EPA-HQ-2017-009579, EPA-HQ-2018-001268, EPA-HQ-2018-003777, and EPA-HQ-2018-007516

117.     Plaintiff EDF re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

118.     EPA has failed to disclose records responsive to EDF's requests in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

119.     EDF has a statutory right to the records it seeks.

120.     Unless enjoined and made subject to a declaration of EDF's legal rights by this Court, EPA will continue to violate EDF's rights to receive public records under FOIA.

## COUNT III

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Provide Reasonably Segregable Portions of Any Records Containing Lawfully Exempt Material in Response to Plaintiff's FOIA Requests EPA-HQ-2017-009579, EPA-HQ-2018-001268, EPA-HQ-2018-003777, and EPA-HQ-2018-007516

121.    Plaintiff EDF re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

122.    EPA violated FOIA by failing to provide EDF with reasonably segregable portions of records (after redaction of portions lawfully exempt under FOIA) that are responsive to EDF's requests, as required by 5 U.S.C. § 552(b).

123.    Unless enjoined and made subject to a declaration of EDF's legal rights by this Court, EPA will continue to violate EDF's rights to receive reasonably segregable portions of records (after redaction of portions lawfully exempt under FOIA).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Declare unlawful EPA's failure to respond to requests within statutory timelines, failure to disclose non-exempt records, and failure to provide reasonably segregable portions of records in response to EDF's FOIA requests;

B.  Order EPA to process and release immediately all records responsive to EDF's July 19, 2017, November 1, 2017, January 25, 2018, and May 9, 2018 FOIA requests at no cost to EDF;

C.  Retain jurisdiction of this action to ensure the processing of EDF's FOIA requests and that no agency records are wrongfully withheld;

D.  Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.  Grant such other and further relief as the Court may deem just and proper.


Dated: December 6, 2018                              Respectfully submitted,

By:     /s/ Hassan Zavareei
Hassan A. Zavareei (456161)
*hzavareei@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiff Environmental
Defense Fund*